IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 1:15-CR-271 (LMB) |
| | ) |
| ANDREW JUSTIN JOHNSON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case came on for trial by the Court on February 17, 2016. The sole issue in this bench trial was whether the government has sufficient evidence to establish beyond a reasonable doubt that defendant, Andrew Justin Johnson ("Johnson" or "defendant"), knowingly and intentionally conspired with Preston Holmes, III ("Holmes"), Matthew Jones ("Jones"), and Ronnesha Michele Upchurch ("Upchurch") (collectively, "alleged coconspirators" or "codefendants") to commit access device fraud or wire fraud as charged in the one-count indictment. For the reasons that follow, the Court finds that the evidence was not sufficient to establish that defendant is guilty beyond a reasonable doubt of the charged conspiracy.

### I. PROCEDURAL HISTORY

Johnson was indicted on September 10, 2015 on one count of conspiracy in violation of 18 U.S.C. § 371. The indictment alleged that Johnson conspired with the codefendants to possess fifteen or more unauthorized access devices with intent to defraud in violation of 18 U.S.C. § 1029(a)(3); to effect transactions with one or more access devices issued to another person, to receive payment or any other thing of value during any one-year period in aggregate of $1,000 or

more with intent to defraud in violation of 18 U.S.C. § 1029(a)(5); and to commit wire fraud in violation of 18 U.S.C. § 1343. Indictment ¶ 1 [Dkt. No. 14], Sept. 10, 2015.

Specifically, the indictment alleged that Johnson, along with the codefendants, travelled to Six Flags America Baltimore/Washington, D.C. ("Six Flags" or "the park") in Upper Marlboro, Maryland between May 31 and June 8, 2015 to steal unattended bags and other personal property and then to use the access devices like credit or debit cards and identification documents found in the stolen bags to buy gift cards and other items or to open fraudulent lines of credit in the names of other persons to make further purchases, totaling over $1,000.00. Id. ¶¶ 6, 7.

Johnson was scheduled to plead guilty on January 21, 2016; however, at his first plea hearing, he advised the Court that he did not wish to proceed. Minute Entry [Dkt. No. 109], Jan. 21, 2106. On February 4, 2016, Johnson came before the Court in a second attempt to plead guilty. Minute Entry [Dkt. No. 134], Feb. 4, 2016. One day before that hearing, Johnson's counsel filed a motion ex parte and under seal requesting to withdraw as counsel because he could not in good faith represent Johnson in pleading guilty to a crime which he doubted defendant had committed. Ex Parte and Sealed Motion [Dkt. No. 132], Feb. 3, 2016. In that motion and during the February 4 hearing, defense counsel explained that his client readily admitted going with the others to Six Flags on June 6, 2015 to steal unattended bags but he also consistently told counsel that his purpose for stealing the bags was to get cash, not access devices. As a result of counsel's concerns and defendant's statement that he only wanted to steal cash, the Court refused to accept Johnson's guilty plea and the government offered the alternative possibility of a bench trial. Minute Entry [Dkt. No. 134], Feb. 4, 2016. Accordingly,

2

Johnson waived his right to a trial by jury and consented to a bench trial on February 17, 2016. See Waiver of Trial by Jury [Dkt. No. 135], Feb. 4, 2016.

## II. FACTUAL FINDINGS

### A. Stipulated/Uncontested Facts

The parties stipulated to nearly every fact. The stipulated and uncontested facts established that on May 31, 2015, Holmes, Upchurch, and Quarles entered the property of Six Flags and stole personal property, including access devices, from victims KP, IMVL, MD, JM, JMV, JMM, AM, BM, and SV. The stolen access devices included, among other items, Victim KP's social security card, Maryland driver's license, Bank of America debit card, and Bank of America credit card. Shortly after the theft, Holmes, Upchurch, and Quarles used Victim KP's Bank of America credit card and debit card at a Giant Grocery Store and CVS in Crofton, Maryland, to make a series of fraudulent transactions.

Holmes, Upchurch, and Quarles also used Victim MD's Discover card in a series of fraudulent transactions. Victims KP and MD did not authorize the transactions. On June 1, 2015, a Capital One credit card bearing the last four digits 7904 ("Capital One card 7904") was issued in Victim KP's name without Victim KP's authorization. The account application for Capital One card 7904 (Exhibit 60) listed Matthew Jones' address as the account address. Copies of Victim KP's social security card and Maryland driver's license were submitted with the application. (Exhibit 61). Victim KP did not authorize the transactions attempted with her card.

On June 1, 2015, a Verizon Wireless account was opened in Victim KP's name using Victim KP's social security number. The account application for this Verizon Wireless account listed Matthew Jones' address as the account address. (Exhibit 82). Five wireless telephones were issued as a result of this account opening. (Exhibit 95). Charges of $2,525.28 were accrued

3

on the account before the account was closed for non-payment of bills. (Exhibit 83). The first call or text message from any device associated with the account was on June 5, 2015, and the last was on September 21, 2015. (Exhibit 96). There was no evidence that Johnson played any part in any of those events.

On June 6, 2015, Johnson along with Holmes, Upchurch, Jones, and Quarles entered the property of Six Flags to steal personal property. Johnson was arrested after he took, without permission, the bag which contained among other things, cash and season passes to Six Flag, which constitute access devices. See Exhibits 102, 103 and 104. This was the only bag he stole. The other coconspirators took multiple bags that day, which contained access devices, cell phones, and other property of victims TI, RS, TS, TA, and RR.

On June 6, 2015, Holmes used Victim TI's Discover card at an Exxon Mobile gas station and Wendy's in Bowie, Maryland. Upchurch and Quarles used Victim TI's Discover card at a Sports Authority in Bowie, Maryland. Victim TI did not authorize the transactions. On June 6, 2015, Holmes also used Victim TS's State Department Federal Credit Union ("SDFCU") debit card at a Target in Bowie, Maryland and attempted to use Victim TI's PNC debit card at the Target in Bowie, Maryland. Victims TS and TI did not authorize the transactions.

As a result of the SDFCU Target transaction, a wire was transmitted from Target Store 10041 in Bowie, Maryland, to the State Department Federal Credit Union servers in Alexandria, Virginia. The State Department Federal Credit Union is headquartered in Alexandria, Virginia and Victim TS is a resident of Alexandria, Virginia.

On June 8, 2015, Upchurch drove a U-Haul open-bed pickup truck (Exhibits 44 and 45), previously used in the thefts on May 31, 2015 Six Flags, on the George Washington Memorial Parkway ("GWMP"), from Maryland into the Eastern District of Virginia. During the June 8,

2015, trip, Upchurch transported and possessed access devices that were stolen from patrons of Six Flags on May 31, 2015. These access devices included credit cards, identification cards, health insurance cards, and a cell phone bearing the names or belonging to KP, IMVL, MD, JM, JMV, JMM, AM, BM, and SV. (Exhibits 2-37, 39- 43). A SmarTrip card belonging to Victim TS (Exhibit 1) and a Discover credit card belonging to Victim TI (Exhibit 38), which had been stolen from Six Flags on June 6, 2015, were found in Upchurch's wallet.

Exhibits 118 to 130 depict items stolen from Victims TI, TS, TA, RS, and RR on June 6, 2015, and Victim JM on May 31, 2015. The items pictured are credit cards, debit cards, backpacks, purses, a government PIV card, cell phones, sunglasses, driver's licenses, and a Six Flags season pass. These items were recovered from Holmes' car on June 6, 2015. Exhibit 136 is a picture of the license plate of the car.

Because a Six Flags season pass is a card used to obtain entrance to a Six Flags amusement park, it qualifies as an access device. Stipulations [Dkt. No. 156], Feb. 17, 2016. The charges incurred through use of the unauthorized access devices exceeded $1,000.00.

B. Trial Evidence

In addition to the stipulations and exhibits agreed to, the trial evidence included the video recorded interview of defendant after he self-surrendered to the warrant issued with the indictment. During that video, which lasted an hour and a half, defendant repeated over a dozen times what he had said during his attempt to plead guilty—he had agreed to go to the Six Flags facility to steal bags to get cash, but that he was not interested in and never intended either to steal access devices or to use them.

The government argued that Johnson actually confessed to being part of the conspiracy when one time during the interview he used the pronoun "we" rather than "they" in responding to a

5

question. The government had planned to play only excerpts of defendant's entire interview. Had that been permitted, that one statement might have supported the prosecution. Defense counsel argued that the entire video should be played and the Court granted that request. Taken in context, the one use of "we" did not constitute an unambiguous confession, particularly given that several times after making that statement the defendant repeated that he went to Six Flags on June 6 solely to steal cash. Moreover, the claim that defendant even used the word "we" as opposed to "they" during the interview is itself subject to serious doubt given how difficult it was to hear the defendant clearly.

The credibility of defendant's claim that he did not conspire to commit access device fraud or wire fraud was supported by defendant's consistent conduct throughout his interview. There were notable instances during the interview that support Johnson's defense that he did not have the criminal intent necessary to be found guilty of the charged crime. When interviewers taunted Johnson with the possibility that the codefendants would share information about him and cooperate with the investigation, Johnson persisted in saying that he intended to steal only cash. Even after the interviewers told Johnson that there was camera surveillance that would have caught him illicitly using access devices, his story remained consistent. Moreover, Johnson turned himself in when he became aware of the arrest warrant as a result of his indictment and was willing to speak with investigators. Lastly, the Court was impressed by Johnson's consistent admission that he only intended to steal cash.

The government's other evidence was the testimony of Holmes,[1] Johnson's codefendant. Most of Holmes' testimony did not further the government's case. For example, Holmes

---

[1] Holmes pleaded guilty pursuant to a written plea agreement on January 28, 2016. See Minute Entry [Dkt. No. 115], Jan. 28, 2016. Holmes' plea agreement included a cooperation agreement.

confirmed that June 6 was the only time Johnson went with him and the codefendants to Six Flags. He also testified that Johnson had never been involved in using stolen access devices. Holmes did make three statements which, if believed, could support Johnson's conviction. First, Holmes testified that Johnson helped him get plates for the Pontiac car he acquired to transport the alleged coconspirators to Six Flags on June 6, 2015 by putting Holmes in touch with a Virginia car dealer who could get plates. When asked "why did you want the car?" Holmes replied,

> One reason, to get the extension with the U-Haul, and the next reason was so that more people can come to Six Flags, because at one point, everyone cannot fit in the U-Haul because it was a three-seater car.

Tr. of Proceedings Held on 2/17/16 at 11:4-8 [Dkt. No. 165], Feb. 19, 2016 ("Tr."). In short, because the U-Haul vehicle that he had been using to drive himself and others to Six Flags only accommodated three people, he needed a larger vehicle to enable him to transport more people to Six Flags. He then explained that Johnson helped him get Virginia license plates for the Pontiac because Johnson wanted to go to Six Flags. Tr. 60:11-13. Holmes did not identify the dealer who helped him get the plates and the government provided no evidence to corroborate this testimony.

Second, Holmes testified that because Johnson did not want to be seen on camera swiping credit cards, they came to an agreement that if any of the bags Johnson stole contained an access device, Johnson would hand the devices over to the others and they would split the profits with him. Tr. 69:16-21. If true, this agreement would provide adequate evidence of the required criminal intent to support the access device fraud objects of the conspiracy; however, this statement is uncorroborated. Tr. 62:3-21.

---

Pl. Agr. ¶ 14 [Dkt. No. 116], Jan. 28, 2016. Holmes testified that he hoped to benefit from his cooperation with the government when he is sentenced on April 15, 2016. Tr. 40:4-19; 55:9-16.

Third, Holmes testified that he used some of the access devices to buy food for everyone at Wendy's and to put gas in the car used to transport the group. Tr. 18:6-8. The government argued that this testimony demonstrated that Johnson intended to benefit from the codefendants' use of stolen access devices based on his original plan to leave Six Flags with the group; however, because Johnson was immediately arrested upon stealing the first bag, it is undisputed that he was not present on June 6 when the access devices stolen that day by the coconspirators were used to purchase food and gas and there is no indication that this was ever part of the plan. Indeed, Holmes' provided no support for the notion that the use of the stolen access devices to benefit the entire group was Johnson's original intention. In fact, Holmes actually testified that Johnson planned to give him some money for gas if he managed to snatch a purse that contained cash. Tr. 69:16-18. Accordingly, Holmes' testimony does not support a finding that Johnson intended to possess or use stolen access devices with the intent to defraud, or intended to commit wire fraud when he went with the coconspirators to Six Flags on June 6, 2015.

### III. CONCLUSIONS OF LAW

"To prove a conspiracy under 18 U.S.C. § 371, the government must establish an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy." United States v. Tucker, 376 F.3d 236, 238 (4th Cir. 2004). To establish the agreement element there must be proof of a "'tacit or mutual understanding' between conspirators" to commit the object offense or offenses, although actual achievement of the object is not required because the essence of a conspiracy is the agreement to commit a crime or crimes. United States v. Ellis, 121 F.3d 908, 922 (4th Cir. 1997) (quoting United States v. Chorman, 910 F.2d 102, 109 (4th Cir. 1990)); United States v. Molovinsky, 688 F.2d 243, 247 (4th Cir. 1982).

8

One "indispensable ingredient of a conspiracy[ is] that the accused persons must have had a common aim." United States v. Goss, 329 F.2d 180, 183 (4th Cir. 1964). "For when a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes." Braverman v. United States, 317 U.S. 49, 53 (1942). To prove conspiracy, "the fundamental legal question is the same: whether the evidence establishes beyond a reasonable doubt that a particular defendant entered into an agreement with others with knowledge of the criminal purpose of the scheme and with the specific intent to aid in the accomplishment of those unlawful ends." United States v. Svoboda, 347 F.3d 471, 477 (2d Cir. 2003).

As such, the government was required to prove "at least the degree of criminal intent necessary for the substantive offense itself." Ingram v. United States, 360 U.S. 672, 678 (1959). Section 1029(a)(3) proscribes possession of "fifteen or more devices which are counterfeit or unauthorized access devices" "knowingly and with intent to defraud." Section 1029(a)(5) proscribes "effect[ing] transactions, with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the aggregate value of which is equal to or greater than $1,000" "knowingly and with intent to defraud." Section 1029(e)(1) defines an access device as

> any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

9

The elements of wire fraud under 18 U.S.C. § 1343 are: "1) a scheme to defraud and 2) the use of a wire communication in furtherance of that scheme." United States v. Bollin, 264 F.3d 391, 407 (4th Cir. 2001). Accordingly, in this context, there would be no contemplation of the use of wire communication unless Johnson had some intention to use or possess access devices.

The Court finds that there is insufficient evidence in this record to find beyond a reasonable double that Johnson had the intent necessary to convict him of the charged conspiracy to commit access fraud and wire fraud. "Conspiracy is a specific intent crime . . . [p]roof that the defendant knew that some crime would be committed is not enough. A conspiracy conviction cannot be sustained unless the government established beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute." United States v. DiTommaso, 817 F.2d 201, 218 (2d Cir.1987) (internal citations and quotation marks omitted (alteration in original)). Although it was not necessary that the coconspirators agreed to all details of the criminal activity, the illicit agreement must encompass the "essential nature of the plan." Blumenthal v. United States, 332 U.S. 539, 557 (1947). All three objects of the charged conspiracy required a showing that Johnson either intended to commit access device or wire fraud or knowingly and intentionally committed an act to further the conspiracy.

Although the evidence established that Johnson knew what Holmes and the other codefendants were doing with access devices they stole from Six Flags, he consistently maintained that he only went with them on June 6, 2015 to steal cash. The government's case relied heavily on the uncorroborated testimony of Holmes, who was not reliable. First, he had a motive to inculpate Johnson because Johnson had given law enforcement incriminating information about Holmes. Moreover, Holmes' demeanor as a witness was problematic; both his

body language and cavalier style rendered his testimony questionable. Without corroboration of Holmes' allegations about Johnson helping him get the license plates and agreeing to give the others any stolen access devices, the evidence was insufficient to establish the required scienter. Without that element being established beyond a reasonable doubt, the defendant is found not guilty.

## IV.   CONCLUSION

For the reasons stated above, a judgment of acquittal will be entered in favor of defendant, Andrew Johnson by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 25th day of February, 2016.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge